IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Case No.  03-cv-00463-PSF-OES

SPERBERG & ASSOCIATES, PC., a Colorado professional corporation,

    Plaintiff,

v.

MHW PROPERTIES, INC., a Florida corporation, and
MICHAEL H. WEISSER, an individual,

    Defendants.

**ORDER ON PENDING MOTIONS FOR SUMMARY JUDGMENT**

This matter comes before the Court on three pending motions for summary judgment or partial summary judgment filed by the parties on April 22, 2005.  A brief description of this case will put these motions in perspective.

**BACKGROUND**

This case started as a basic collection case, filed on February 21, 2003 by Plaintiff Sperberg & Associates, a law firm located in Avon, Colorado, seeking to collect attorneys fees it claimed to be owed by Defendant MHW Properties, Inc. ("MHW"), and its principal, Defendant Michael Weisser, clients it represented in connection with a state court case in Eagle County captioned *MHW Properties, Inc. v. Gypsum Airpark, LLC,* 98 CV 436 (District Court of Eagle County) ("state court litigation"), and allegedly in connection with several other matters.  The state court litigation involved a claim by MHW to obtain specific performance of a real estate contract pursuant to which MHW

was to buy a parcel of land from the seller.  The sale did not close as the seller took the position that MHW failed to fulfill a condition precedent that it obtain "approval of a PUD process."  The state court litigation, which was tried to the court, resulted in a judgment against MHW, and an order directing that MHW forfeit a $100,000 earnest money deposit it had made to seller and pay the attorneys' fees of the seller.

On March 14, 2003, defendants removed this case to federal court based on diversity jurisdiction.  On March 20, 2003, defendants answered and filed a counterclaim.

The complaint names as defendants both MHW Properties, Inc. and Michael H. Weisser, apparently its principal.  The complaint originally contained five claims for relief.  On August 13, 2004, this Court granted defendants' motion to bifurcate and stay the Fourth Claim for Relief which sought to pierce the corporate veil of Defendant MHW Properties, Inc., and hold Defendant Weisser individually liable for the amounts sought by plaintiff.  On November 4, 2004, the parties stipulated to dismissal of plaintiff's Third Claim for Relief which alleged a breach of the duty of good faith and fair dealing.  Thus, the three claims remaining at this time are basic claims for breach of contract (First Claim for Relief), and an apparently alternative claim for payment based on *quantum meruit,* or the reasonable value of the legal services rendered (Second Claim for Relief), and a claim for attorneys' fees incurred in collecting the debt allegedly due (Fifth Claim for Relief).

The defendant's original counterclaim asserted one claim alleging legal malpractice and  breach of fiduciary duty by plaintiff in connection with legal services

rendered "for the benefit of MHW related to the acquisition of and concerning litigation involving approximately 30 acres of property in Eagle County." (Counterclaim at ¶ 3). On February 7, 2005, MHW moved to amend its counterclaim. Over plaintiff's opposition, the amended counterclaim was permitted by order of the Magistrate Judge on April 18, 2005 (Dkt. # 104). The amended counterclaim set forth two claims for relief, professional negligence and breach of fiduciary duty, and recited numerous paragraphs relating to the representation of defendants by plaintiff in connection with the property known as "Gypsum Airpark." Plaintiff filed its reply to the amended counterclaim on April 22, 2005.

**THE PENDING MOTIONS**

On April 22, 2005, the parties also filed the three dispositive motions that will now be addressed in this Order.

<u>Plaintiff's Motion for Partial Summary Judgment (Dkt. # 109)</u>

Plaintiff filed a motion for partial summary judgment on its claim for attorneys' fees. The motion first seeks summary judgment as to the fees plaintiff alleges are due to it for its work on six matters other than the Gypsum Airpark matter, in the total amount of $1,486.34. Plaintiff asserts there are no genuine issues of material fact regarding the fees due on these six matters as defendant has "admitted" the amounts as to two of the matters and has denied knowledge of the amounts due on the other four matters (Plaintiff's Motion at 2-3).

Defendants assert that there are disputed issues of material fact as to all six matters (Defendants' Response at 2). As to two matters, defendants state that they do

not dispute that the work was performed but they contend a payment has been made for those matters and the payment was not applied by plaintiff to the correct matters. *See* Affidavit of Michael Weisser, Exhibit A to Defendants' Response ("Response") at ¶ 8). As to the remaining four matters, defendants assert that they dispute whether the fees were reasonable for the work actually performed and whether any services were performed at all. (*Id.* at ¶ 9). Although plaintiff has attached its billing statements to its motion, the Court finds insufficient admissible evidence, by way of affidavit or otherwise, that the work described in those bills was actually performed or that it was requested to be performed by defendants.

Plaintiff also seeks partial summary judgment on its right to retain a $25,000 payment made by defendants to it in June 2001. The payment was made at a time during the proceedings in the state court litigation when plaintiff had filed a motion to withdraw from representing defendants for nonpayment of its fees. It appears that a hearing was held before the trial judge and an agreement was reached whereby defendants would pay $25,000 and plaintiff would continue its representation. *See* Exhibit 4 to Plaintiff's Motion, Transcript of June 14, 2001 hearing before the Honorable Richard H. Hart, at 4 and 6. Plaintiff claims its entitlement to retain these fees cannot be in dispute, as it continued to represent the defendants to completion of the state court case.

Defendants assert that the parties' intent was that the $25,000 payment was to be deposited into the plaintiff's trust account and was to be applied to future services of plaintiff, but plaintiff in fact deposited the funds into its operating account and applied

-4-

the monies to previously billed disputed amounts (Response at 4). Defendants further argue the deposit of these funds into plaintiff's operating account constitutes unethical conduct contrary to the decision in *In re Sather*, 3 P.3d 403, 409 (Colo. 2000). Plaintiff argues that although the opinion in *In Re Sather* led to the promulgation of Rule 1.5(f) of the Colorado Rules of Professional Conduct, such rule was not adopted until a year after it received the $25,000 payment and has no applicability here. Irrespective of whether or not the rule applies to plaintiff's alleged conduct, the issue turns on the parties' intent at the time the payment was made.

As to both of these issues, this Court cannot find an absence of disputed issues of material fact. Whether the plaintiff performed the work entitling it to the amounts billed on the six matters, and what was the parties' intent as to the $25,000 payment, are matters of disputed material facts that will have to be resolved at trial. Accordingly, plaintiff's motion for partial summary judgment (Dkt. # 109) is DENIED.

<u>Plaintiff's Motion for Summary Judgment (Dkt. # 106)</u>

Plaintiff has also filed a motion for summary judgment (Dkt. # 106) in which it seeks "summary judgment on certain claims and allegations in MHW Properties, Inc.'s Amended Counterclaim." (Motion at 1). It is not entirely clear as to exactly which claim, or as to which part of a claim, plaintiff is seeking summary judgment. Nonetheless, it is apparent that plaintiff is asserting that it cannot be liable for any of the professional negligence alleged in defendants' amended counterclaim.

Plaintiff asserts that the alleged negligence arises from the defendants' allegations that: 1) plaintiff advised them not to accept a proposal that would have

resolved the Gypsum Airpark dispute short of litigation, 2) plaintiff advised them not to accept an offer from the seller to return the $100,000 earnest money in settlement of the dispute, 3) plaintiff advised defendants to file the lawsuit on the basis that they had a viable claim for specific performance, while failing to advise them that the ambiguity of the phrase "approval of a PUD process" would make an order for specific performance unlikely (Plaintiff's Brief in Support of Motion at 3).  There appears to be no dispute that the value of the parcel of land was well in excess of the contract sales price, so that Defendant MHW was seeking specific performance to receive the benefit of the contract price/market value differential.  Plaintiff also states that defendants make "passing reference" to allegations of malpractice relating to: a) plaintiff's failure to advise them to convert a "sketch plan" application to a PUD prior to closing, and b) plaintiff's prejudicing the state court suit by moving to withdraw during trial (Plaintiff's Brief in Support of Motion at 4, 11).

      Plaintiff first contends that it cannot be liable for professional negligence regarding the alleged settlement advice because a lawyer has only a "duty to advise the client of settlement offers and their ramifications" and it is up to the client to decide whether or not to accept a settlement offer.  Plaintiff also asserts that it did not advise defendants to reject the offer to return the earnest money (Plaintiff's Brief in Support of Motion at 7-8).  Plaintiff next contends that it cannot be liable for giving advice to file the lawsuit seeking specific performance because its conduct in this regard cannot be found to be unreasonable as a matter of law, as the lawsuit survived motions for summary judgment and a mid-trial motion to dismiss.  *Id.* at 10.  Finally, plaintiff asserts

that defendants have come forward with no expert witness testimony to support their claim of malpractice relating to the filing of the mid-trial motion to withdraw, or the failure to advise the defendants to convert their application for a sketch plan to a PUD prior to the scheduled closing of the real estate sale.  *Id.* at 11.

Not surprisingly, MHW takes a different view of plaintiff's alleged professional negligence case.  It asserts that the negligence arises from plaintiff's advice to them that the provision of the land sales contract calling for the approval of a PUD was ambiguous, thus supporting a "50/50" chance of success in litigation against the seller seeking specific performance (Response at 2).  This advice, MHW asserts, fell below the applicable standard of care for lawyers because the plaintiff either did not know or tell them that specific performance is not available as a remedy for contracts that are ambiguous.  *Id.* at 4-5.  Defendant further asserts that it relied on plaintiff's advice in rejecting the settlement offers and proceeding with the lawsuit, which ultimately redounded to their detriment.  *See* Affidavit of Michael Weisser, Exhibit D to Response at ¶ 5).

Both sides to this case agree that a lawyer's duty to advise his client regarding settlement offers includes providing advice as to the "ramifications" of accepting or rejecting such offers, citing to *Miller v. Byrne*, 916 P. 2d 566, 574 (Colo. App. 1995) (Plaintiff's Brief in Support at 7; Response at 19). The ramifications of rejecting a settlement would include the prospects of succeeding in litigation in the event of rejection.

Here, plaintiff argues that MHW did not rely on its advice in rejecting the settlement offers, contending that Weisser testified in his deposition contrary to what he states in his affidavit. His affidavit, as noted above, avers that he did rely on the plaintiff's advice. Apparently recognizing that the affidavit, if accepted, would create a disputed issue of fact as to defendants' reliance on its advice, plaintiff argues that the affidavit should be ignored as "simply an attempt to create a sham issue of fact and should be disregarded," citing to *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986). (Reply at 2).

The Court has reviewed the deposition testimony tendered by plaintiff in support of this position and cannot agree that the affidavit is inconsistent, much less an attempt to create a "sham issue of fact." When Mr Weisser was asked why he did not accept the seller's offer to return the earnest money in exchange for a settlement, he replied "Because Mr. Sperberg was of the opinion that we had a meritorious case on specific performance." (Weisser Deposition at 146, Exhibit 2 to Plaintiff's Brief in Support of Motion). To the Court, this testimony is not inconsistent with the contents of the affidavit referenced above, nor does it appear to be an attempt to create a sham issue of fact. Whether or not defendants received advice from plaintiff as to whether to accept the settlement offers, and whether the defendants relied on such advice if given, are disputed issues of material fact.

Plaintiff's argument that its alleged conduct in giving advice to commence the state court lawsuit cannot be found unreasonable because the case survived summary judgment and a motion to dismiss is also unavailing. First, plaintiff cites no authority for

-8-

the proposition that surviving a motion for summary judgment renders reasonable the lawyer's advice to bring a case as a matter of law.  Moreover, the question of whether the legal advice is reasonable so as to meet the standard of care required of lawyers is generally a question of fact for a jury to decide.  *See McCafferty v. Musat,* 817 P.2d 1039, 1044 (Colo. App. 1990).

Here, the parties have offered conflicting expert witness opinions as to whether or not the purported advice given by plaintiff fell below the standard of care.  *Compare* Expert Opinions of Daniel Hoffman and Robert Holmes, Exhibits B and F to Defendants' Response, respectively, stating their opinions of the standard of care and plaintiff's failure to meet it, with Expert Opinion of Laurin Quiat, Exhibit D to Defendants' Motion for Summary Judgment (Dkt. # 110), stating that plaintiff met the applicable standard of care.  This Court finds that there are genuine issues of material fact as to whether or not plaintiff met the applicable standard of care.

Because there are disputed issues of material fact regarding the conduct of plaintiff acting in its capacity as lawyer to MHW, and whether the conduct met the applicable standard of care for lawyers, plaintiff's motion for summary judgment as to these issues is DENIED.

As to the filing of the motion to withdraw and the alleged failure to advise defendants to convert the "sketch plan" to a PUD, the defendants appear to concede that they do not have expert testimony that such conduct fell below the standard of care. The argue instead, that such conduct is so clearly and palpably negligent, that no expert testimony is necessary (Response at 20-22).

The general rule in Colorado, as defendants recognize, is that except in clear and palpable cases, expert testimony is required to establish standards of professional conduct in a legal malpractice action. *See e.g. McLister v. Epstein & Lawrence, P.C.,* 934 P.2d 844, 847 (Colo. App. 1996); *Boigegrain v. Gilbert*, 784 P.2d 849, 850 (Colo. App. 1989). While defendants contend that plaintiff's conduct in failing to advise them to convert the sketch plan to a PUD was a "clear and palpable negligent failure to advise of a course of conduct that would have avoided the entire [state court] lawsuit" (Response at 21), the Court does not agree that the issue is so easily collapsed into one sentence. While the failure to convert the sketch plan to a PUD may well have been the cause of the failure of the sale to be consummated and the subsequent lawsuit, the first issue is whether plaintiff failed to meet the standard of care by not giving the advice described. Only if it did so, is the issue of causation relevant. The Court cannot agree that the intricacies of real estate practice in Colorado are so obvious that lay jurors can determine whether a lawyer who does not give the advice described by defendants falls below the standard of care.

In *Boigegrain v. Gilbert*, *supra*, the court affirmed a summary judgment entered in favor of a lawyer alleged to have committed malpractice in connection with a real estate matter because the plaintiff failed to adduce expert testimony that the lawyer's conduct fell below the standard of care. In so doing, the court rejected the suggestion that the conduct in such a case was so "clear and palpable" that expert testimony was not necessary. The court stated that under the circumstances of that case, "the ordinary

knowledge of laypersons could not be relied upon to provide the requisite standard of care." 784 P.2d at 850.

Similarly, in *McLister, supra*, the court affirmed a summary judgment on a malpractice claim against a lawyer based on alleged negligent supervision of an associate. The court held that plaintiff's failure to adduce expert testimony on the issue of a lawyer's duty of supervision of associates was a valid ground for the entry of summary judgment. That court as well rejected the argument that a lawyer's alleged failure to supervise is so "clear and palpable" that expert testimony is not required as to the standard of care for supervising attorneys. 934 P.2d at 847-48. Moreover, in *Crystal Homes, Inc. v. Radetsky,* 895 P.2d 1179, 1182 (Colo. App. 1995), the court of appeals again held that expert testimony was required to establish liability for an alleged breach of a professional relationship where duties arising therefrom would be measured against standards applicable to attorneys.

The Court has reviewed the reports of defendants' expert witnesses and finds no opinion contained therein regarding the standard of care on the issue of advising a client about converting a "sketch plan" to a PUD, nor any opinion that plaintiff fell below the standard of care in this regard. Accordingly, the plaintiff is entitled to partial summary judgment on this aspect of the defendants' claim of professional negligence.

The Court also finds no opinion of an expert that the plaintiff's filing of a motion to withdraw in the circumstances presented here falls below the standard of care required of lawyers. Moreover, it is dubious whether the filing of the motion to withdraw had any effect on the outcome of the trial. As noted, plaintiff did continue to represent MHW in

the case through the final judgment.  There is no indication that the filing of the motion to withdraw in any way caused the state court judge to act with prejudice towards defendant MHW.  From the record there appears no evidence supporting a disputed issue of fact that Judge Hart was or should have been affected adversely towards MHW by such a motion.  Accordingly, the plaintiff is also entitled to partial summary judgment on this aspect of the defendants' claim of professional negligence.

<u>Defendants' Motion for Partial Summary Adjudication and Motion for Summary Judgment (Dkt. # 110)</u>

Defendant Weisser first seeks summary judgment as to all claims asserted by plaintiff against him individually, on the grounds that he was not the client of the law firm, was not a party to the state court litigation, and in his personal capacity was not "unjustly enriched" by the services performed by plaintiff as to which it seeks payment in *quantum meruit*.

Plaintiff responds to this argument by asserting that the work performed on the six matters other than the Gypsum Airpark matter were performed for Mr. Weisser in his personal capacity, and not for MHW.  *See* Affidavit of Robert Sperberg, Exhibit 1 to plaintiff's Combined Response to Defendants' Motion, at ¶¶ 2 and 13.  Plaintiff also argues that Defendant Weisser may be held personally liable for the work on the Gypsum Airpark matter because Mr. Weisser personally "assured" that plaintiff would be paid for its work, thereby creating an oral contract.  *Id.* at ¶ 2.  Alternatively, plaintiff contends that Weisser should be personally liable under a theory of *quantum meruit* as the transaction was structured to personally benefit him (Plaintiff's Combined Response at 5-6).

Defendant Weisser replies that the argument that he is personally liable for the fees relating to the six other matters is a "red herring," but subsequently argues only that the amount of fees for those six matters is in dispute (Defendants' Reply at 4). In their Motion for Summary Judgment, defendants argue that the form of plaintiff's billing statements indicate no expectation of individual liability on the part of Weisser, and refer to an "exemplar" of the plaintiff's billing statements attached thereto as Exhibit N (Defendants' Motion at 10). The Court notes, however, while the billing statement attached as Exhibit N, which relates to the Gypsum Airpark matter, is addressed "Michael Weisser, President, MHW Properties, Inc., P.O. Box 2017, Avon, Colorado 81620," the billing statements for the other six matters, attached as part of Exhibit 1 to Plaintiff's Motion for Partial Summary Judgment (Dkt. # 109) are addressed "Michael Weisser, MHW Properties, P.O. Box 2854, Edwards, Colorado." This evidence, taken together with the affidavit of Mr. Sperberg, creates at least an inference from which a jury could find that the work performed on the six matters was performed for Mr. Weisser personally.

With respect to the work performed on the Gypsum Airpark matter the Court finds that although there was no written contract for the provision of services, Mr. Weisser's alleged assurance to plaintiff that it would be paid, if believed by the jury, could constitute an oral contract for the payment by Mr. Weisser personally. It is unclear from the evidence before the Court whether Defendant Weisser admits that such a statement was made, and if made exactly what it meant, but the facts are not

sufficiently undisputed that the Court can grant summary judgment on the present record before it.

The Court notes that the plaintiff has submitted substantial evidence that the Gypsum Airpark transaction was apparently carried out for the personal benefit of Mr. Weisser. The Court also notes that Mr. Weisser, rather than MHW in its corporate capacity, provided at least some of the funding for the transaction. Nonetheless, the Court agrees with Defendant Weisser that as matter of law he cannot be liable to plaintiff, in these circumstances, under a theory of *quantum meruit*.

Under applicable Colorado law, a party cannot be liable to a claimant under a theory of unjust enrichment or *quantum meruit* merely because it received a benefit from the performance of an express contract by the claimant with another party. *See Stokes v. Int'l Media Sys., Inc.*, 686 P.2d 1368, 1370 (Colo. App. 1984) ("A person who has conferred a benefit upon another as the performance of a contract with a third person is not entitled to restitution from the other merely because of the failure of performance by the third person" citing to *Restatement of Restitution* § 110 1937.). *See also DCB Const. Company, Inc. v. Central City Dev. Co.*, 965 P.2d 115,121 (Colo. 1998). Here, plaintiff claims an express contract with MHW to pay for its services on the Gypsum Airpark matter. Even if the rendering of those services had the effect of benefitting Mr. Weisser, he would be not be liable under the above-cited cases. But here, given the outcome of the Gypsum Airpark litigation, it can hardly be said that Mr. Weisser received a "benefit" that it would be unjust for him to retain. To the extent he is being sued as a non-contracting party, the absence of a tangible benefit actually

received as a result of the services rendered appears to preclude a claim based on unjust enrichment or *quantum meruit*. *See DCB Const. Company, Inc., supra,* 965 P.2d at 119-120. Thus a claim for *quantum meruit* or unjust enrichment from the provision of services on the Gypsum Airpark matter does not lie against Mr. Weisser.

The Court's conclusion on this issue does not at this time address plaintiff's Fourth Claim for Relief, which asserts that Mr. Weisser may be liable to it for services rendered on the Gypsum Airpark matter under a theory that he is the "alter ego" of MHW. That claim has been bifurcated from the case at Mr. Weisser's request and is not before the Court at this time.

Defendant MHW also asserts in its motion that it is entitled to partial summary Judgment regarding the "admissibility of certain evidence concerning Sperberg's defense" to its counterclaim of malpractice (Defendant's Motion at 1). In its brief in support of this aspect of its motion, MHW states that "the failure of the Gypsum Litigation trial court to grant summary judgment in favor of the [sic] Gypsum is, as a matter of law, irrelevant to the trial court's ultimate and inevitable finding that MHW <u>utterly</u> failed to perform its obligations under the real estate contract." Defendants' Brief in Support of Motion for Summary Judgment at 3 (emphasis in original). MHW requests this Court to "exclude" this evidence as irrelevant (*id.*).

The Court thus understands this aspect of MHW's motion to be more in the nature of a motion *in limine* seeking to exclude evidence that plaintiff may offer as a defense to the claims of professional negligence, rather than a request for judgment on any claim or part of a claim, as permitted by Rule 56, F.R.Civ.P. As the Court has

already stated, whether or not the conduct of the plaintiff met the standard of care applicable to lawyers in these circumstances is a question of fact that must be decided by the jury.  Whether or not the evidence sought to be excluded is relevant to that determination is not a decision the Court can reach at this time without a record before it.  Accordingly, this aspect of defendants' motion will be denied without prejudice.

Finally, defendants seek summary judgment as to plaintiff's Fifth Claim for Relief, which seeks the attorneys' fees incurred in this litigation, and summary judgment as to plaintiff's claim for prejudgment interest on any amounts due to plaintiff for legal services (Defendants' Brief in Support of Motion for Summary Judgment at 13-14).

Defendants assert that the "American Rule" governs in Colorado and that in the absence of a written agreement, statute or court rule there is no entitlement to attorneys' fees.  *Id.*  As noted above, plaintiff has no written agreement with defendants regarding its fees.  Plaintiff responds that it is seeking attorneys' fees only pursuant to C.R.S. § 13-17-101 *et seq.,* which permits the Court to award attorneys' fees under the circumstances described therein.  While such a claim need not be included as a claim for relief, plaintiff essentially asserts it was simply being overly cautious in so pleading (Plaintiff's Response at 7-8).  The Court need not, indeed cannot, now decide if attorneys' fees would be allowed if plaintiff prevails, and accordingly the defendants' motion for summary judgment on the Fifth Claim for Relief is DENIED without prejudice as premature, at best.

Defendants also asserted in their motion that Ethics Opinion No. 66 of the Colorado Bar Association's Ethics Committee precludes plaintiff from recovering

prejudgment interest on any amounts it seeks in this case.  In response, plaintiff correctly pointed out that Ethics Opinion No. 66 distinguishes between unilateral charges of interest on bills issued by attorneys and a request for interest at the statutory rate when a lawsuit to collect fees is brought, as is the case here.  Indeed, the Ethics Opinions states: "If there has been no agreement with regard to interest, it is ethical to request that statutory interest be granted."  Exhibit O to Defendants' Brief in Support of Motion for Summary Judgment at 3.  Because plaintiff's response clarifies that all it seeks here is prejudgment interest "at the statutory rate" defendant has withdrawn its motion as to the issue of prejudgment interest.  *See* Defendants' Reply at 11. Accordingly, this aspect of Defendants' Motion for Summary Judgment is DENIED as moot.

**CONCLUSION**

Plaintiff's Motion for Partial Summary Judgment (Dkt. # 109) is DENIED.

Plaintiff's Motion for Summary Judgment (Dkt. # 106) is GRANTED in part and DENIED in part.  The motion is denied as to defendants' counterclaim for professional negligence, except to the extent that the negligence is premised on either plaintiff's filing of a motion to withdraw in the state court litigation and its alleged failure to advise defendants to convert a "sketch plan" into a PUD.  As to these two issues the motion is granted.

Defendants' Motion for Partial Summary Adjudication and Motion for Summary Judgment (Dkt. # 110) is GRANTED in part and DENIED in part.  It is granted with respect to plaintiff's Second Claim for Relief to the extent that claim is alleged against

Defendant Weisser, individually, for work performed on the Gypsum Airpark matter, only.  In all other respects, the motion is denied.

DATED:  July 25, 2005

BY THE COURT:

s/ Phillip S. Figa

_____
Phillip S. Figa
United States District Judge